IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

STEVEN VARGO, et al., on behalf of
themselves and all others similarly situated,

        Plaintiffs,                           Case No. 1:24-cv-00301 SMD-LF

v.

EVO TRANSPORTATION & ENERGY
SERVICES, INC. and EVO SERVICES
GROUP, LLC,

        Defendants.

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs seek to represent a class consisting of all New Mexico truck drivers from whom Defendants—the drivers' former employers—withheld overtime wages for overtime hours. The Court should certify that class under Rule 23.[1] The class passes all requirements of Rule 23(a) and Rule 23(b)(3) with flying colors.

For starters, the claims of all class members rely on common questions of law. All class members are New Mexico residents who drove routes that went partially through New Mexico and partially through other states. Plaintiffs assert that the time they spent driving across the New Mexico border counts toward their total hours in computing overtime under the New Mexico Minimum Wage Act ("MWA"). Defendants disagree. Thus, whether cross-border drive-time counts toward overtime is a question common to all class members that will impact them all in a uniform manner.

And this common question of law predominates over any issues unique to individual class members. The dispute over cross-border drive-time is the parties' primary remaining merits

---

[1] In this brief, "Rule" stands for "Federal Rule of Civil Procedure."

1

dispute. The record demonstrates that class members worked overtime hours. And Defendants admit they did not pay class members an overtime rate during those overtime hours. Yet Defendants still claim they do not owe overtime wages because no class member worked overtime hours *exclusively* in New Mexico during any individual workweek (because, as noted, the class members' routes went partially across New Mexico's border). Thus, answering the cross-border drive-time question should either deliver a "merits win" for all class members or a "merits loss" to all class members. That means the question predominates, as required for certification.

That the class passes the remaining certification requirements is beyond reasonable dispute. Plaintiffs' claims are "typical" of the class because they rely on the exact same legal theories and factual assertions as the class's claims. Plaintiffs are more than "adequate" class representatives because they share the same interests as the class. The class is "numerous" enough for certification because the Tenth Circuit, and this district, have repeatedly recognized that *smaller* classes are numerous enough for certification. And a class action is the "superior" method for resolving the class's claims because individual class members' damages are lower than the cost of litigating an independent suit, meaning class members will never recover their unpaid wages outside of the class context. In view of all this—and for the additional reasons outlined below—the Court should certify the class.

## I.    PROPOSED CLASS DEFINITION

Plaintiffs ask the Court to certify a class defined as follows: "All hourly employees who, during the Relevant Period, worked over forty hours in at least one workweek while driving a New Mexico route for EVO Transportation & Energy Services, Inc. and/or EVO Services Group, LLC." "New Mexico route" means any route that went through New Mexico, even if it did not occur entirely within New Mexico. "Relevant Period" means June 1, 2021 through the present.

## II.    BACKGROUND

### A.    Defendants employed all proposed class members as drivers to service contracts with the U.S. Postal Service.

Defendants are surface transportation companies.  (Dkt. 7 ¶ 2 (admitting Defendants operate in the surface transportation industry)).  In June 2021, they began transporting mail on New Mexico routes for the U.S. Postal Service ("USPS") under two contracts: USPS Contract 274Y3 and USPS Contract 793L7.[2]  The routes for both contracts included large portions in New Mexico, and they also included drive-time across New Mexico's borders.[3]  Defendants hired and employed at least sixty-seven New Mexico residents, as hourly drivers, to service these USPS routes during the Relevant Period.[4]  Of these drivers, at least forty-seven qualify as putative class members in this case based on the hours that they worked.[5]

### B.    All putative class members performed the same primary job duties, subject to the same uniform company policies, for Defendants.

While working for Defendants, all class members fulfilled the same responsibilities.  They all transported U.S. mail.[6]  They all did so on specified routes that they were assigned at their time

---

[2] Ex. 1 (Defs' Amended Objections & Answers to Plfs' First Set of Interrogatories) at PDF Pgs. 3, 9; Ex. 2 (Deposition Transcript of Clifford B. Finkle ("Finkle Tr.")) 20:22-21:16.

[3] Ex. 3 (Defs' Suppl. Objections & Answers to Plfs' Second Set of Interrogatories) at PDF Pgs. 3-6; Ex. 2 (Finkle Tr.) 48:7-9, 52:16-24, 56:14-58:25; Ex. 4 (Deposition Transcript of Candice Cooke ("Cooke Tr.")) 36:7-22; Ex. 5 (Deposition Transcript of Steven Vargo ("Vargo Tr.")) 54:24-55:9.

[4] Ex. 1 (Defs' Amended Objections & Answers to Plfs' First Set of Interrogatories) at PDF Pgs. 4-5, 9, 13; Ex. 6 (Defs' Responses to Plfs' First Set of Requests for Admission) at PDF Pgs. 4-5; Ex. 2 (Finkle Tr.) 20:22-21:12.

[5] Defendants list forty-seven individuals who they admit "worked more than 40 hours in at least one workweek" in the Relevant Period.  Ex. 1 (Defs' Amended Objections & Answers to Plfs' First Set of Interrogatories) at PDF Pgs. 9-10.  Defendants' pay data shows three individuals excluded from the list—Jerry Carlton, Fredrick Johnson, and Rodney Mcclain—also worked overtime hours in that period.  Ex. 7 (Declaration of Cristina Calderon ("Calderon Decl.")) ¶ 5.  But that is immaterial for purposes of this motion; Plaintiffs will refer to the class as a forty-seven-member class herein because that is the undisputed, minimum number of class members.

[6] Ex. 2 (Finkle Tr.) 20:22-12.

of hire.[7]  And they all completed these routes in round-trip shifts that Defendants required them to finish within individual workdays.[8]

These workdays followed the same pattern for all class members.  At the start of each day, all class members clocked into work using an electronic logging device ("ELD").[9]  And they all completed a pre-trip inspection of their vehicle using a checklist accessible on the ELD.[10]  During the day, all class members drove U.S. mail to relay points at which they handed the mail off to other drivers.[11]  At that point, they each received new batches of U.S. mail to transport back to the class members' original, starting location.[12]  Then they each drove back to that location.[13]  At the end of each day, all class members completed post-trip inspections of their vehicles—again, using

---

[7] Ex. 2 (Finkle Tr.) 22:10-13.

[8] Ex. 3 (Defs' Amended Objections & Answers to Plfs' Second Set of Interrogatories) at PDF Pg. 8 ("The drivers drove their assigned routes each day they were scheduled to work."); Ex. 2 (Finkle Tr.) 46:2-47:21, 48:10-23, 54:9-56:11; Ex. 4 (Cooke Tr.) 36:7-22, 46:24-48:4; Ex. 8 (Deposition Transcript of David Diener ("Diener Tr.")) 57:13-21; Ex. 9 (Deposition Transcript of Anthony Gutierrez ("Gutierrez Tr.")) 33:10-21.

[9] Ex. 6 (Defs' Responses to Plfs' First Set of Requests for Admission) at PDF Pg. 6; Ex. 10 (Driver Job Description); Ex. 2 (Finkle Tr.) 59:7-60:18, 61:2-10; 62:21-2, 63:6-20; Ex. 11 (Deposition Transcript of Jared Brown ("Brown Tr.")) 87:14-25, 88:3-89:14; Ex. 12 (Deposition Transcript of Samantha Reiger ("Reiger Tr.")) 27:13-22; Ex. 4 (Cooke Tr.) 28:25-29:10; Ex. 8 (Diener Tr.) 141:3-5; Ex. 13 (Deposition Transcript of Jacob Soto ("Soto Tr.")) 80:20-81:9; Ex. 14 (Deposition Transcript of Brian Thorson ("Thorson Tr.")) 129:6-13; Ex. 15 (Deposition Transcript of Damian Vasquez ("Vasquez Tr.")) 74:9-12.

[10] Ex. 16 (2022 Driver Policy Handbook) at EVO 02257; Ex. 17 (2023 Driver Policy Handbook) at EVO 002319; Ex. 18 (2024 Driver Policy Handbook) at EVO 002382; Ex. 4 (Cooke Tr.) 35:5-18; Ex. 8 (Diener Tr.) 113:24-115:3, 141:3-22; Ex. 5 (Vargo Tr.) 45:12-21, 53:11-20.

[11] Ex. 2 (Finkle Tr.) 46:5-11; 54:9-56:1.

[12] This was the normal course of events, as noted in Defendants' corporate representative deposition testimony.  Ex. 2 (Finkle Tr.) 46:5-11; 54:9-56:1.  As also noted in that testimony, sometimes, this course of events was slightly different (for instance, a driver might drive a trailer of U.S. mail out to a relay point, but then would not receive a trailer to return to the driver's original location).  *Id.*

[13] Ex. 3 (Defs' Amended Objections & Answers to Plfs' Second Set of Interrogatories) at PDF Pgs. 3-6; Ex. 2 (Finkle Tr.) 45:14-23, 54:9-17.

a checklist available on their ELDs.[14]  Then, to complete their shifts, class members clocked out of work using the ELDs.[15]

Naturally, given that all class members fulfilled the same responsibilities, all class members were subject to the same job requirements.  They all had to possess a CDL license and a valid medical certificate.[16]  They all had to pass ongoing USPS background checks.[17]  And they all were subject to the same vision, depth perception, and hearing standards.[18]

Aside from imposing the same job requirements on all class members, Defendants supervised all class members using uniform policies that controlled their working conditions. During the Relevant Period, Defendants published annual Driver Policy Handbooks that set forth these policies.[19]  The policies covered working hours, wages and benefits, dispatch operations, performance reviews, pre- and post-trip inspections, operational policies, prohibited conduct, load securement, passengers, care of trucks, paid time off, leaves of absence, and many other things.[20] In other words: they covered nearly every aspect of class members' employment with Defendants.

---

[14] Ex. 16 (2022 Driver Policy Handbook) at EVO 02257; Ex. 17 (2023 Driver Policy Handbook) at EVO 002319; Ex. 18 (2024 Driver Policy Handbook) at EVO 002382; Ex. 4 (Cooke Tr.) 35:5-18; Ex. 8 (Diener Tr.) 113:24-115:3, 141:3-22; Ex. 5 (Vargo Tr.) 45:12-21, 53:11-20.

[15] Ex. 10 (Driver Job Description); Ex. 2 (Finkle Tr.) 59:7-60:18, 61:2-10; 62:21-63:2; 63:6-20; Ex. 11 (Brown Tr.) 87:14-25, 88:3-89:14; Ex. 12 (Reiger Tr.) 27:13-22; Ex. 4 (Cooke Tr.) 28:25-29:10; Ex. 8 (Diener Tr.) 141:3-5; Ex. 13 (Soto Tr.) 80:20-81:9; Ex. 14 (Thorson Tr.) 129:6-13; Ex. 15 (Vasquez Tr.) 74:9-12.

[16] Ex. 10 (Driver Job Description); Ex. 2 (Finkle Tr.) 28:10-29:4; Ex. 15 (Vasquez Tr.) 48:4-7.

[17] Ex. 2 (Finkle Tr.) 29:18-30:2.

[18] Ex. 2 (Finkle Tr.) 29:5-17.

[19] *See, generally*, Ex. 16 (2022 Driver Policy Handbook); Ex. 17 (2023 Driver Policy Handbook); Ex. 18 (2024 Driver Policy Handbook); Ex. 2 (Finkle Tr.) 40:6-10, 43:23-44:1, 44:22-25; Ex. 11 (Brown Tr.) 27:21-28:2, 35:14-36:15, 37:17-38:4.

[20] *See, generally*, Ex. 16 (2022 Driver Policy Handbook); Ex. 17 (2023 Driver Policy Handbook); Ex. 18 (2024 Driver Policy Handbook).

Defendants also tracked all class members' hours, and paid all class members, in a uniform manner.[21] Defendants used the ELD system to record the time that class members worked; that system then transferred data to Defendants' "APlus" payroll system; and Defendants then used that system to calculate wages.[22] Moreover, Defendants paid all class members from bank accounts operated by the same individual: Harpreet Kumar, the Controller for Defendant EVO Transportation & Energy Services, Inc., which is the parent company of Defendant EVO Services Group, LLC.[23]

> **C.    As a matter of uniform company policy, Defendants withheld overtime rates for overtime hours from putative class members.**

Among Defendants' many uniform policies for class members, the one most pertinent to this suit concerns pay: Defendants paid all class members a "straight rate" for all hours worked, regardless of whether class members worked over forty hours per week or not.[24] This fact is undisputed. Defendants admitted it in their interrogatory responses.[25] Defendant's annual

---

[21] Ex. 2 (Finkle Tr.) 27:20-28:9, 66:3-17; Ex. 12 (Reiger Tr.) 33:12-18.

[22] Ex. 3 (Defs' Amended Objections & Answers to Plfs' First Set of Interrogatories) at PDF Pg. 11; Ex. 19 (Defs' Suppl. Objections & Answers to Plfs' Third Set of Interrogatories) at PDF Pg. 4; Ex. 16 (2022 Driver Policy Handbook) at EVO 02251; Ex. 17 (2023 Driver Policy Handbook) at EVO 002311; Ex. 18 (2024 Driver Policy Handbook) at EVO 002375, Ex. 2 (Finkle Tr.) 61:3-62:15, 63:21-64:3; Ex. 12 (Reiger Tr.) 33:22-35:6.

[23] Ex. 20 (Deposition Transcript of Soumit Roy ("Roy Tr.")) 19:20-20:4, 29:13-19, 58:11-13.

[24] Ex. 1 (Defs' Amended Objections & Answers to Plfs' First Set of Interrogatories) at PDF Pgs. 10-11; Ex. 16 (2022 Driver Policy Handbook) at EVO 02252; Ex. 17 (2023 Driver Policy Handbook) at EVO 002312; Ex. 18 (2024 Driver Policy Handbook) at EVO 002376; *see* ECF No. 7 (Defs' Answer to Cmplt.) ¶ 19 (admitting Defendants did not pay Plaintiffs any overtime premiums for time they worked over 40 hours in individual workweeks of seven days); Ex. 4 (Cooke Tr.) 64:16-18; Ex. 15 (Vasquez Tr.) 84:9-15.

[25] Ex. 1 (Defs' Amended Objections & Answers to Plfs' First Set of Interrogatories) at PDF Pg. 10 ("Interrogatory No. 5: Of the Drivers identified in Defendants' answer to Interrogatory No. 1, how many were paid one and one-half times their regular rate of pay for the time they worked in excess of 40 hours in at least one individual workweek of seven days? Answer: None.").

employee handbooks from the Relevant Period all state that Defendants' drivers would not receive overtime rates for overtime hours.[26]   And the earnings records that Defendants produced in discovery verify that class members did not, in fact, receive an overtime rate for overtime hours.[27]

### D.     Plaintiffs are suing to recover the overtime wages due to them, and to the putative class, under the New Mexico Minimum Wage Act.

This "straight rate" policy impacted all putative class members.  As noted: all class members worked over forty hours in at least one workweek during the Relevant Period, and they all received straight-rate pay during all those hours.[28]   Though some New Mexico drivers did not work over forty hours in any workweek, those drivers are excluded from the class definition in this case.  *See Supra* Part I (providing proposed class definition).

Plaintiffs filed this putative class action in state court in February 2024, alleging Defendants' failure to pay them—and putative class members—overtime rates for overtime hours violated the New Mexico Minimum Wage Act ("MWA").  (Dkt. 1-3).  Under the MWA, "[a]n employee shall not be required to work more than forty hours in any week of seven days, unless the employee is paid *one and one-half times* the employee's regular hourly rate of pay for all hours worked in excess of forty hours."  NMSA § 50-4-22(D) (emphasis added).

Defendants removed the case to this Court in March 2024.  (Dkt. 1).  After initial attempts at mediation failed, the parties engaged in extensive discovery, which closed on September 2, 2025.  (Dkt. 74 at 2).  This included voluminous, and comprehensive, class-related discovery. Plaintiffs obtained documentary evidence covering all class members' hours worked, pay rates,

---

[26] Ex. 16 (2022 Driver Policy Handbook) at EVO 02252; Ex. 17 (2023 Driver Policy Handbook) at EVO 002312; Ex. 18 (2024 Driver Policy Handbook) at 002376.

[27] Ex. 7 (Calderon Decl.) ¶ 5.

[28] Ex. 1 (Defs' Amended Objections & Answers to Plfs' First Set of Interrogatories) at PDF Pgs. 9-10; Ex. 7 (Calderon Decl.) ¶ 5.

job responsibilities, and job requirements.[29]  They also secured interrogatory responses covering

the same topics.[30]  And they conducted four Rule 30(b)(6) corporate representative depositions,

which all focused on issues applicable classwide.[31]

Plaintiffs obtained much of this over Defendants' objections.  Defendants initially argued

that Plaintiffs had no right to large categories of class discovery, and that Plaintiffs should receive

only discovery relevant to the individual named Plaintiffs.  (*See* Dkt. 63 (discussing the parties'

discovery disputes)).  To overcome these objections, and to ensure they protected the interests of

absent class members, Plaintiffs engaged in extensive, successful motion practice, including two

motions to compel and a motion to modify.  (Dkt. 63; Dkt. 65; Dkt. 76).  As a result, Defendants

produced class-related documents and information, and they testified to class-related issues

through their corporate representatives.  Based on this class-related evidence, Plaintiffs now move

the Court for class certification.

## III.    LEGAL STANDARD

Rule 23 governs class certification.  Fed. R. Civ. P. 23.  A class seeking certification must

first meet all requirements of Rule 23(a).  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614

(1997).  A class passes Rule 23(a) if "(1) the class is so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses

of the representative parties are typical of the claims or defenses of the class; and (4) the

representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P.

---

[29] *See generally* Ex. 16 (2022 Driver Policy Handbook); Ex. 17 (2023 Driver Policy Handbook); Ex. 18 (2024 Driver Policy Handbook); Ex. 10 (Driver Job Description); Ex. 7 (Calderon Decl.) ¶ 5.

[30] *See generally* Ex. 1 (Defs' Amended Objections & Answers to Plfs' First Set of Interrogatories); Ex. 3 (Defs' Amended Objections & Answers to Plfs' Second Set of Interrogatories).

[31] *See generally* Ex. 2 (Finkle Tr.); Ex. 11 (Brown Tr.); Ex. 20 (Roy Tr.).

23(a).   These requirements are known as the "numerosity," "commonality," "typicality," and "adequacy" requirements.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010).

A class that passes Rule 23(a) must also fall into one of Rule 23(b)'s categories to obtain certification.  *Amchem Prods., Inc.*, 521 U.S. at 614.  Plaintiffs seek certification under Rule 23(b)(3).  That rule requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These are known as the "predominance" and "superiority" requirements.  *Amchem Prods., Inc.*, 521 U.S. at 615.

## IV.    ARGUMENT

The Court should certify the proposed class.  This district has consistently granted class certification in overtime wage cases like this one.  *Apodoca v. Armada Skilled Home Care of NM LLC*, No. 18-cv-1071, 2024 WL 4976659, at *5 (D.N.M. Dec. 4, 2024) (certifying class seeking unpaid overtime wages under the MWA); *Rodriguez v. Peak Pressure Control, LLC*, No. 2:17-cv-00576, 2020 WL 3000415, at *18 (D.N.M. June 4, 2020) (same); *Deakin v. Magellan Health, Inc.*, No. 1:17-cv-00773, 2024 WL 3829737, at *1 (D.N.M. Aug. 14, 2024) (same).  And, as outlined below, Plaintiffs' proposed class easily meets all the certification requirements of Rule 23(a) and Rule 23(b)(3).

### A.    The proposed class satisfies the numerosity threshold.

To begin, the class satisfies the numerosity requirement.  Fed. R. Civ. P. 23(a)(1).  Per that requirement, certification is proper where a "class is so numerous that joinder of all members is impracticable."  *Id.*  The "key factor in determining the impracticability of joinder is the size of the class."  *Lopez v. City of Santa Fe*, 206 F.R.D. 285, 289 (D.N.M. 2002).  There is no "set formula" that determines if a class is sufficiently numerous.  *Rex v. Owens ex rel. State of Okl.*,

585 F.2d 432, 436 (10th Cir. 1978).  But the Tenth Circuit recognizes that numerosity may be satisfied, and a class action may be "viable," in "instances where as few as 17 to 20 persons are identified as the class."  *Id.*  Here, the proposed class far exceeds that benchmark—it contains at least forty-seven individuals.  *Supra* Section II.A.  Thus, consistent with Tenth Circuit authority, this Court should find that the proposed class satisfies the numerosity requirement.

Even setting aside Tenth Circuit authority, decisions from this district show the proposed class is numerous enough for certification.  This district consistently recognizes that classes smaller than, or comparable to, a forty-seven-member class can satisfy the numerosity requirement.  *Felps v. Mewbourne Oil Co., Inc.*, 336 F.R.D. 664, 670 (D.N.M. 2020) (stating that "smaller classes (less than 40 members)" may satisfy the numerosity requirement); *Kiowa Asssociation v. King*, No. 09-cv-00467, 2010 WL 11596626, at *9 (D.N.M. Mar. 31, 2010) (a class "assumed to be at least 50" was "sufficiently numerous"); *Deakin v. Magellan Health, Inc.*, No. 1:17-cv-00773, 2024 WL 3829737, at *4 (D.N.M. Aug. 14, 2024) (class "comprised of sixty-four" individuals was adequately numerous).  In fact, in one case, this district held that a class of *exactly* forty-seven members is large enough for certification.  *M.G. by & through Garcia v. Armijo*, No. 1:22-cv-00325, 2023 WL 8602960, at *10 (D.N.M. Dec. 12, 2023) (finding that a class of "at least forty-seven" individuals was "so numerous to make joinder impracticable").  Hence, the class passes the numerosity test, per this district's precedent, based on the class's size alone.

Notably, the class passes the numerosity test even if the Court looks beyond the class's size.  This is because other factors show that joinder of the class's members is "impracticable" under Rule 23(a).  Fed. R. Civ. P. 23(a).  Factors that "may inform the court's impracticability determination" include the "degree of sophistication" of the putative class and "class members' reluctance to sue individually.'"  *Felps*, 336 F.R.D. at 670.  Moreover, joinder is often

10

impracticable where individual class members "suffered a relatively small amount of damages." *Nakkhumpun v. Taylor*, No. 12-cv-01038, 2015 WL 6689399, at *4 (D. Colo. Nov. 3, 2015).

Each of those factors support certification. The proposed class consists of hourly workers—not sophisticated companies—so the class's "lack of legal sophistication" helps to "render joinder impracticable." *See Alfred v. Okeelanta Corp.*, No. 89-cv-8285, 1991 WL 177658, at *10 (S.D. Fla. Apr. 16, 1991). Moreover, class members have displayed "reluctance to sue individually." *Felps*, 336 F.R.D. at 670. Aside from the named Plaintiffs, *zero* class members are suing Defendants to recover overtime wages.[32] Finally, many class members suffered relatively low individual damages, ranging from hundreds of dollars to the low-thousands of dollars.[33] These amounts are lower than the cost of litigating a federal suit, meaning these class members will not pursue relief outside of a class action. *Kerner v. City & Cnty. of Denver*, No. 11-cv-00256, 2013 WL 1222394, at *4 (D. Colo. Mar. 25, 2013) (discussing "negative value" cases in which "the expense of pursuing relief on an individual basis would likely exceed the expected individual recovery"). As a result, joinder is clearly impracticable, because courts cannot join suits that class members will never file. *See id.*

A final point on numerosity: the Tenth Circuit "treat[s] ascertainability as a sub-requirement of numerosity," and the putative class passes that sub-requirement. *Evans v. Brigham Young Univ.*, No. 22-cv-4050, 2023 WL 3262012, at *5 (10th Cir. May 5, 2023). To demonstrate "ascertainability," the named plaintiffs in a class action must simply show there is a "way to identify absent class members." *Id.* ("If the district court cannot ascertain who falls into the class,

---

[32] Ex. 20 (Roy Tr.) 14:22-15:4 (Q. Do you know if any New Mexico drivers filed any lawsuits against Defendants based on the lack of overtime pay during the relevant time period? A. Since the relative time period includes up to the present, this case is the only case I'm aware of related to overtime compensation . . . in New Mexico.").

[33] Ex. 7 (Calderon Decl.) ¶ 7.

then it cannot evaluate whether the class is so numerous that joinder is impracticable.").  Here, one can identify class members by simply looking at Defendants' payroll records to see which individuals worked over forty hours in at least one workweek within the Relevant Period.[34] Defendants cannot reasonably dispute this: they themselves have provided, in their interrogatory responses, a list of forty-seven specific individuals who worked over forty hours in at least one workweek during the Relevant Period.[35]  There is no doubt that the proposed class passes the ascertainability requirement, or the numerosity requirement more generally.

### B.    The class meets the commonality requirement.

The proposed class also fulfills Rule 23(a)'s commonality requirement.  Under that requirement, the class's claims must all "depend upon a common contention" that is "central to the validity" of the case and "is capable of classwide resolution."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  There need only be a "single issue common to the class" to demonstrate commonality.  *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999) (quoting *K.L. v. Valdez*, 167 F.R.D. 688, 690 (D.N.M.1996)).  And if such an issue exists, other "differences between class members' claims do not defeat certification." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010).  Here, the proposed class's claims depend on multiple common contentions that satisfy the foregoing requirements.

*First*, all class members' claims depend upon the contention that, as a matter of fact, Defendants failed to pay class members an overtime rate for overtime hours.  This contention is central to class members' claims, *prima facie*, because their claims are for unpaid overtime wages. (Compl. ¶¶ 69-72).  And the contention is capable of classwide resolution because Defendants

---

[34] Ex. 7 (Calderon Decl.) ¶ 5.

[35] Ex. 1 (Defs' Amended Objections & Answers to Plfs' First Set of Interrogatories) at PDF Pgs. 9-10 (amended answer to Interrogatory 4).

employed uniform wage policies that applied to all class members, as evidenced by Defendants'
employee handbooks and discovery responses in this case.  *Supra* Section II.C.  On these bases
alone, the class satisfies the commonality requirement.  *See Deakin*, 2024 WL 3829737, at *4 ("In
the employment context, courts have typically found the commonality requirement is satisfied
where employees claim that they were denied . . . overtime compensation as a result of a corporate
employment policy."); *Apodoca*, 2024 WL 4976659, at *3 (commonality satisfied where
"common evidence w[ould] resolve the core issue[]" of whether the defendants' "payment scheme
. . . failed to compensate hours worked in excess of 40 per week").

*Second*, the proposed class's claims depend on the common contention that, as a matter of
law, New Mexico drivers' time spent working across New Mexico's borders is compensable under
the MWA's overtime provision.  This contention is central to all class members' claims because
all class members are New Mexico residents who drove across New Mexico's borders and,
according to Defendants, *no* class member worked over forty hours per week in New Mexico
*alone*.[36]  Further, this contention is capable of classwide resolution.  It presents a simple question
of law: whether the MWA compensates out-of-state time.  And the answer to that question will
apply with equal force to each class member's claim.

*Third*, the proposed class's claims depend on the common contention that class members
qualified as Defendants' "employees" within the meaning of the MWA.  This contention is central
to class members' claims because only an "employee" may recover overtime wages under the
MWA.  NMSA § 50-4-22(D).  And the contention is capable of classwide resolution.  Whether

---

[36] Ex. 1 (Defs' Amended Objections & Answers to Plfs' First Set of Interrogatories) at PDF Pg.
11 (stating, in response to Interrogatory 5, "[n]one of EVO's New Mexico drivers worked more
than forty (40) hours *within the State of New Mexico*"); Ex. 3 (Defs' Amended Objections &
Answers to Plfs' Second Set of Interrogatories) at PDF Pgs. 3-6 (describing routes driven by class
members in the answer and amended answer to Interrogatory 15).

individuals are "employees" of an entity depends on the "economic realities" test. *Casias v. Distribution Mgmt. Corp., Inc.*, No. 11-cv-00874, 2014 WL 12710236, at *10 (D.N.M. Mar. 31, 2014). The "focal point" of the test is "whether the individual is economically dependent on the business to which he renders service, or is, as a matter of economic fact, in business for himself." *Id.* (quoting *Doty v. Elias*, 733 F.2d 720, 722-23 (10th Cir. 1984)). The answer to this question will be the same for all class members because they all held the same role for Defendants and they all were subject to the same policies of Defendants. *Supra* Sections II.B-C. Thus, the question is a "common" one under Rule 23(a).

Any one of the foregoing issues sufficiently demonstrate commonality. *Valdez*, 186 F.3d at 1288 (10th Cir. 1999) (a "single issue common to the class" creates commonality). That there are at least three common questions of fact and law facing the putative class strongly supports certification.

### C.    Plaintiffs' claims are typical of the class's claims.

Typicality is also present. Typicality exists where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Courts tend to interpret typicality as requiring that the class members' claims arise from the same course of events, meaning each class member must make similar legal arguments to prove the defendant's liability." *Rodriguez v. Peak Pressure Control, LLC*, No. 2:17-cv-00576, 2020 WL 3000415, at *8 (D.N.M. June 4, 2020) (quoting *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 416 (S.D.N.Y.)) (brackets and quotation marks removed). Plaintiffs' and class members' claims arise from the same course of events: Defendants refused to pay them overtime wages during hours worked over forty per week during the Relevant Period. *Supra* Section II.C. And Plaintiffs and class members must make identical legal arguments to prove liability: they must argue that Defendants violated the MWA because all time they worked for Defendants—both in- and out-of-

14

state—counted toward their required overtime.  Thus, typicality is satisfied.

This district's precedent reinforces this conclusion.  Per this district: "[i]t is axiomatic that when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Rodriguez v. Peak Pressure Control, LLC*, No. 2:17-cv-00576, 2020 WL 3000415, at *8 (quoting *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir.1993)) (cleaned up).  The same conduct here was directed at the named Plaintiffs and the class members.  Specifically: Defendants' policy of paying drivers a flat-time rate for overtime hours impacted Plaintiffs and class members in the same way.  *Supra* Section II.C-D.  So, Plaintiffs' claims are typical of the class's claims.

**D.    Plaintiffs are adequate representatives of the class.**

The Court should also find that the class satisfies the adequacy requirement.  This requirement permits certification where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: (i) whether the named plaintiffs and their counsel have any conflicts with other class members; and (ii) whether the named plaintiffs and their counsel will vigorously prosecute the action on the class['s] behalf."  *Daye v. Cmty. Fin. Serv. Centers, LLC*, 313 F.R.D. 147, 179 (D.N.M. 2016) (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002)).

For starters, Plaintiffs and their counsel have no conflicts with the class.  Conflicts generally do *not* arise, for adequacy purposes, where named plaintiffs are "part of the class and possess the same interest and suffer[ed] the same injury as the class members."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citation and quotation omitted).  That is the situation presented here.  The named Plaintiffs are part of the class, held the same roles as class members

15

(as truck drivers), and suffered the same injuries as class members (non-payment of overtime wages for overtime hours). *Supra* Part II. They have no conflicts with the class, and their counsel certainly have no such conflicts either.[37]

Also: the named Plaintiffs and their counsel will vigorously pursue relief on the class's behalf. This is clear because the named Plaintiffs and their counsel *have been* vigorously prosecuting the case for the class. Every named Plaintiff sat for a deposition and actively participated in the discovery process.[38] And class counsel has taken significant discovery regarding the class. When Defendants initially refused to provide discovery pertaining to absent class members, Plaintiffs' counsel insisted on obtaining that discovery.[39] They filed two separate motions to compel on the issue, as well as a motion to modify the case schedule to ensure that Defendants' corporate representatives would testify to class issues.[40] Then, counsel took four separate corporate representative depositions and obtained extensive testimony on class matters.[41] Because Plaintiffs and their counsel have already worked vigorously to protect the class's interests, there should be no doubt that these efforts will continue. *See In re Motor Fuel Temperature Sales Pracs. Litig.*, 271 F.R.D. 263, 282 n.25 (D. Kan. 2010) (adequacy satisfied where plaintiffs "have and apparently will continue to prosecute the action vigorously through qualified counsel"); *Melnick v. TAMKO Bldg. Prods. LLC*, 347 F.R.D. 79, 94-95 (D. Kan. 2024) ("Class counsel has vigorously represented the named Plaintiffs in this case for the past nine years, and the Court has no doubt that counsel would continue to do so. Thus, class counsel meets the adequacy

---

[37] Ex. 21 (Declaration of Douglas Werman ("Werman Decl.")) ¶ 19.

[38] *Id.* ¶ 18.

[39] *Id.* ¶ 17.

[40] *Id.*

[41] *Id.*

requirement.").

Plaintiffs' attorneys' extensive experience in class litigation focused on overtime wages also supports Plaintiffs' adequacy argument. *Soseeah v. Sentry Ins.*, No. 12-cv-1091, 2013 WL 11327129, at *5 (D.N.M. Nov. 4, 2013) ("Adequacy of representation will be found where the named plaintiffs have no antagonistic or conflicting interests with those of the class and where class counsel is qualified, experienced and able to conduct the proposed litigation."). Plaintiffs' attorneys at Werman Salas P.C. have been litigating—and winning—class actions for decades.[42] They have obtained class certification in over one hundred cases, have recovered over $400 million on behalf of their clients, and have special expertise in minimum wage and overtime matters.[43] That is why courts across the country, including this district, regularly find Werman Salas P.C. to be adequate class counsel in matters like this one.[44] *E.g.*, *Pruess v. Presbyterian Health Plan, Inc.*, 745 F. Supp. 3d 1218, 1239-40 (D.N.M. 2024) (granting class certification and finding Werman Salas P.C. satisfied the adequacy requirement while noting that "Werman Salas is a national law firm focused on labor and employment class and collective actions").

### E.    The class satisfies the predominance requirement.

The class also satisfies the predominance requirement. Under this requirement, a plaintiff must demonstrate that "common questions subject to generalized, classwide proof predominate over individual questions." *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019) (quoting *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014)). Common questions "predominate" if they "are more prevalent or important than . . .

---

[42] Ex. 21 (Werman Decl.) ¶¶ 6-13, 16.

[43] *Id.*

[44] Courts also regularly commend Werman Salas P.C. for their excellent national reputation and their extensive experience advocating for the rights of working people. *Id.* ¶ 6.

individual issues." *Id.*  And a class passes the predominance test "so long as at least *one* common issue predominates." *Id.* (emphasis added).  In this case, multiple common issues predominate because multiple highly-important issues are subject to classwide proof.

One such question is whether Defendants, as a matter of fact, provided overtime pay for overtime hours.  The question is highly important: that Defendants did not provide overtime rates for overtime hours is the entire basis of Plaintiffs' suit.  *Supra* Section II.D.  And the question is also subject to classwide proof.  Plaintiffs will present the overtime pay policies from Defendants' handbooks—which applied to *all* class members—as proof that Defendants did not provide overtime pay.[45]  Plaintiffs will also present Defendants' discovery responses and payroll records as proof that confirms Defendants paid *all* class members straight time for overtime hours.[46]  As a result, this question clearly predominates under Rule 23(b)(3).

Next, the question of whether the MWA compensates cross-border drive-time predominates.  Pure questions of law are inherently subject to classwide "proof" because they involve legal determinations that will not turn on individual class members' circumstances.  *See Brandon v. 3PD, Inc.*, No. 13-cv-3745, 2014 WL 11348998, at *15 (N.D. Ill. Aug. 6, 2014), *report and recommendation adopted*, No. 13-cv-3745, 2014 WL 11348985 (N.D. Ill. Oct. 20, 2014) ("Whether the putative class members' damages must exclude deductions charged to secondary drivers or helpers is, however, a common question of law that will apply class-wide."); *Markson v. CRST Int'l, Inc.*, No. 5:17-cv-01261, 2022 WL 790960, at *13 (C.D. Cal. Feb. 24, 2022)

---

[45] Ex. 16 (2022 Driver Policy Handbook) at EVO 02252; Ex. 17 (2023 Driver Policy Handbook) at EVO 002312; Ex. 18 (2024 Driver Policy Handbook) at 002376.

[46] Ex. 1 (Defs' Amended Objections & Answers to Plfs' First Set of Interrogatories) at PDF Pg. 10 ("Interrogatory No. 5: Of the Drivers identified in Defendants' answer to Interrogatory No. 1, how many were paid one and one-half times their regular rate of pay for the time they worked in excess of 40 hours in at least one individual workweek of seven days?  Answer: None."); Ex. 7 (Calderon Decl.) ¶ 5.

(predominance satisfied where "the decision of what mode of analysis to apply—per se, rule of reason, or otherwise—is entirely a question of law for the Court, and determining whether the agreement was per se unreasonable and whether it impacted interstate commerce will turn on evidence common to the class") (cleaned up).  The cross-border drive-time question is, *prima facie*, a pure question of law (i.e., "does the MWA compensate out-of-state work?").  And it is a very important question because it could resolve the merits in favor of—or against—the class as a whole (given Defendants' statement that all class members drove overtime hours *including* out-of-state time, whereas no class members drove overtime hours *excluding* out-of-state time).[47]  So, this question alone satisfies the predominance requirement.

Additionally, whether class members qualified as Defendants' "employees" is a question that predominates.  The question is central to the suit because class members cannot recover damages from Defendants under the MWA unless they were Defendants' "employees" as a matter of law.  NMSA § 50-4-22(D) (MWA overtime provision applies to "employee[s]").  And the class can answer the question using classwide proof.  Recall that whether an individual is an "employee" depends on the "economic reality test." *Casias*, 2014 WL 12710236, at *10.  Courts applying that test look to various factors, such as "the degree of control exerted by the alleged employer over the worker," the worker's "conditions of employment," the "degree of skill required to perform the work," and whether the alleged employer "maintain[ed] employment records" regarding the worker.  *Id.* (cleaned up).

Common evidence will speak to all these issues.  Defendants' corporate policies will demonstrate that Defendants exerted identical control over all class members.  *Supra* Sections II.B-

---

[47] Ex. 1 (Defs' Amended Objections & Answers to Plfs' First Set of Interrogatories) at PDF Pg. 11 (stating, in response to Interrogatory 5, "[n]one of EVO's New Mexico drivers worked more than forty (40) hours *within the State of New Mexico*").

C.   Those policies, and Defendants' corporate witness testimony, will show class members' working conditions—and the degree of skill required of all class members—was uniform because all class members worked the same roles with the same responsibilities. *Id.* And Defendants' records and corporate witness testimony will show that Defendants maintained employment records for all class members in a uniform manner.[48]

Even setting all this aside, Plaintiffs can establish predominance on an additional basis. This district recognizes that "plaintiffs can meet rule 23(b)(3)'s predominance requirement by demonstrating a method for quantifying individual damages that applies across the board and hence is common to the class: a common classwide method for calculating individual damages." *Anderson Living Tr. v. ConocoPhillips Co., LLC*, 349 F.R.D. 365, 465 (D.N.M. 2025). Plaintiffs are providing, with this motion, such a method for computing class members' damages.[49] The method calculates damages on a per-week basis by (1) establishing drivers' "Regular Rate" of pay under the MWA; (2) subtracting 40 from the driver's total hours to determine their "Overtime Hours" for the week; (3) multiplying the Overtime Hours by half the Regular Rate to calculate the driver's "Owed Overtime" for the week, *see* NMSA § 50-4-22(D); (4) multiplying the Owed Overtime by two to calculate the driver's "Statutory Damages" for the week, *see* NMSA § 50-4-26(C); and then (5) adding the Owed Overtime to Statutory Damages to compute final damages for the week.[50] Repeating this process for each week from the Relevant Period, of course, will yield each class member's total damages.[51] Because Plaintiffs have a common method for computing every class member's damages, Plaintiffs satisfy the predominance requirement.

---

[48] *E.g.*, Ex. 11 (Brown Tr.) 33:17-34:15.

[49] Ex. 7 (Calderon Decl.) ¶¶ 6-7.

[50] *Id.* ¶ 6.

[51] *Id.* ¶ 7.

###### F.    The class fulfills the superiority requirement.

Finally, litigating this case as a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Rule 23(b)(3) includes a non-exhaustive list of factors pertinent to the superiority analysis." *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 915 (10th Cir. 2018). They include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.* (citing Rule 23(b)(3)).

Each factor weighs in favor of certification. Class members have *zero* interest in filing separate actions, given that *zero* class members have done so.[52] The extent of present litigation favors class treatment because discovery in this case yielded voluminous class discovery which would have to be repeated in individual actions if a class is not certified. *Supra* Section II.D. Concentrating litigation in this forum is desirable for the same reason, and because a New Mexico court—like this one—should resolve questions about New Mexico law governing New Mexico residents driving New Mexico routes. Lastly, there will be no significant difficulties in managing a class action in this case. Class discovery has already occurred, class members are easily identifiable, and this district frequently certifies similar types of classes. *Supra* Sections II.D & IV.A; *Apodoca*, 2024 WL 4976659, at *5; *Rodriguez*, 2020 WL 3000415, at *18; *Deakin*, 2024 WL 3829737, at *1.

---

[52] Ex. 20 (Roy Tr.) 14:22-15:4 ("Q. Do you know if any New Mexico drivers filed any lawsuits against Defendants based on the lack of overtime pay during the relevant time period? A. Since the relative time period includes up to the present, this case is the only case I'm aware of related to overtime compensation . . . in New Mexico.").

There is another reason treating this case as a class action is the "superior" approach. A "Rule 23(b)(3) class action is superior when it allows for the vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 915 (10th Cir. 2018) (citation and quotation omitted). This is such a case. As discussed, proposed members of the class are hourly drivers whose individual damages would not justify the costs of bringing individual suits.[53] Cases like this are the very reason that class actions exist, so proceeding here as a class action is not only the superior approach, it is the *only* fair and sensible approach.

## V.   CONCLUSION

For the foregoing reasons, the Court should grant this motion and certify this case as a class action under Rule 23.

Dated: October 17, 2025

Respectfully submitted,

*/s/ John J. Frawley*
One of Plaintiffs' Attorneys

Douglas M. Werman
John J. Frawley
Anne Kramer
**WERMAN SALAS P.C.**
77 W. Washington, Suite 1402
Chicago, Il 60602
Telephone: (312) 419-1008
dwerman@flsalaw.com
jfrawley@flsalaw.com
akramer@flsalaw.com

Justin R. Kaufman
Philip M. Kovnat
**DURHAM, PITTARD & SPALDING, LLP**
505 Cerrillos Road, Suite A209
Santa Fe, NM  87501
Telephone: (505) 986-0600

---

[53] Ex. 7 (Calderon Decl.) ¶ 7.

jkaufman@dpslawgroup.com
pkovnat@dpslawgroup.com

***Attorneys for Plaintiffs***

23

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 17, 2025, I caused a copy of the foregoing document to be served on all counsel of record by filing it via the Court's electronic filing system.

*/s/ John J. Frawley*
John J. Frawley