## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

STEVEN VARGO, et al., on behalf of
themselves and all others similarly situated,

           **Plaintiffs,**                      **Case No. 1:24-cv-00301 SMD-LF**

v.

EVO TRANSPORTATION & ENERGY
SERVICES, INC. and EVO SERVICES
GROUP, LLC,

           **Defendants.**

### PLAINTIFFS' REPLY IN SUPPORT OF
### MOTION FOR CLASS CERTIFICATION

## I.    INTRODUCTION

Defendants fundamentally misunderstand Rule 23's certification requirements. Defendants primarily oppose certification by contending that the Court "may" need to answer individualized questions about whether "some" class members are exempt from the protections of the New Mexico Minimum Wage Act ("MWA"). But Defendants do not identify those class members or explain how they might be exempt. All Defendants do is provide a conclusory assertion that one of the named Plaintiffs is exempt because he qualified as a "supervisor" under the MWA.

These arguments do nothing to undermine Plaintiffs' certification motion. It is well-established that defendants cannot prevent certification by raising speculative, unsupported arguments about defenses that they "may" raise.  Yet, as noted, that is the *primary* form of argument that Defendants use to oppose certification. Separately: courts frequently hold that defendants cannot stop certification using an affirmative defense if a "preliminary look" at the defense indicates it is meritless.  Here, Defendants' *own documents* explicitly disprove Defendants' argument that a named Plaintiff qualified as a "supervisor" under the MWA.

These are just some of the flaws in Defendants' arguments. Ultimately, Defendants cannot escape the law or the record, both of which show that common contentions at the heart of this litigation bind all Plaintiffs and class members together. That means this case is well-suited for collective treatment. The Court should grant Plaintiffs' motion for class certification.

## II.    ARGUMENT

### A.    It is Undisputed that Plaintiffs Pass the Numerosity Test.

Defendants "concede that Plaintiffs can demonstrate numerosity." (ECF No. 108 at 5). The proposed class contains at least forty-seven individuals.[1] That is more than enough for certification.

---

[1] (ECF No. 90-1 (Defs' Am. Objections & Answers to Plfs' First Set of Interrogatories) at PDF Pgs. 9-10).

1

*See, e.g.*, *Felps v. Mewbourne Oil Co., Inc.*, 336 F.R.D. 664, 670 (D.N.M. 2020) ("smaller classes (less than 40 members)" may satisfy the numerosity requirement). So, numerosity is satisfied.

### B.    Plaintiffs Have Established Commonality and Predominance.

Plaintiffs also fulfill Rule 23's commonality and predominance requirements. Commonality is satisfied if the "determination" of the "truth or falsity" of at least one "common" contention will "resolve an issue that is central to the validity of each one of the [class members'] claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). As for "predominance," that "requires that 'common questions subject to generalized, classwide proof'" are "more prevalent or important" than the individual questions in the case. *Felps*, 336 F.R.D. at 675 (quotations omitted). Here, three common issues predominate notwithstanding Defendants' contrary arguments.

### 1.    The Common Contention that Defendants Failed to Pay Potential Class Members an Overtime Rate for Overtime Hours Predominates.

For starters, Plaintiffs' and class members' claims all depend upon the common contention that Defendants had a uniform policy of *not* paying overtime rates for overtime hours. This satisfies commonality because, "[i]n the employment context, courts have typically found the commonality requirement is satisfied where employees claim that they were denied minimum wage or overtime compensation as a result of a corporate employment policy." *Deakin v. Magellan Health, Inc.*, No. 17-cv-773, 2024 WL 3829737, at *4 (D.N.M. Aug. 14, 2024) (quotations omitted).

And Plaintiffs' "overtime policy" contention predominates because common proof will demonstrate its veracity. Defendants affirmed that they failed to pay overtime wages to all class members in their discovery responses,[2] and all class members can use those responses to prove

---

[2] (ECF No. 90-1 (Defs' Am. Objections & Answers to Plfs' First Set of Interrogatories) at PDF Pg. 10 ("Interrogatory No. 5: Of the Drivers identified in Defendants' answer to Interrogatory No. 1, how many

their claims. Defendants' handbooks and payroll registers are additional common proof. The former say drivers "will receive full ***regular*** pay up to the maximum hours allowed," and the latter confirm that no class member received overtime rates for hours worked over forty in any week.[3]

Defendants briefly contend that Plaintiffs' "overtime policy" contention is not common and does not predominate. (ECF No. 108 at 12). They do so only by attacking a *separate* common contention raised by Plaintiffs: the contention that all class members qualified as "employees" under the MWA. (*Id.* at 7, 12). This attack fails for reasons discussed below. *Infra* Section II.B.3.

### 2. Plaintiffs' Assertion that Cross-Border Drive-Time is Compensable under the MWA is Common and Predominates.

Likewise, the purely legal question of whether New Mexico drivers' time spent working across New Mexico's borders is compensable under the MWA's overtime provision is common and predominates.[4] Defendants acknowledge that all class members drove across state lines during their shifts, and that no class member drove over forty hours in any individual workweek solely

---

were paid one and one-half times their regular rate of pay for the time they worked in excess of 40 hours in at least one individual workweek of seven days? Answer: None.")).

[3] (ECF No. 90-16 (2022 Driver Policy Handbook) at EVO 02252 (emphasis added); ECF No. 90-17 (2023 Driver Policy Handbook) at EVO 002311; ECF No. 90-18 (2024 Driver Policy Handbook) at EVO 002376; *see* ECF No. 90-7 (Declaration of Cristina Calderon ("Calderon Decl.")) at Attach. A (payroll register sampling)).

[4] In their Response to Plaintiffs' Motion for Class Certification, Defendants cite *Martinez v. FedEx Ground Package Sys., Inc.*, No. 20 Civ. 1052, 2022 WL 4464781 (D.N.M. Sept. 26, 2022) for the proposition that courts in this district have already answered the question of whether New Mexico drivers' time spent working across New Mexico's boarders is compensable under the MWA's overtime provision, and that resolution of that question requires analysis of individual factual circumstances of drivers. (ECF No. 108 at 12 ("the Courts previously examining this issue of law reached differing conclusions based on the factual differences in each type of case.")). But Defendants are wrong. That is not what the *Martinez* court held. *See Martinez*, 2022 WL 4464781, at *6, *9. Rather, the *Martinez* court concluded that no other court in this district had already determined whether the MWA applies "when an employee is based in New Mexico starts and ends his workday in New Mexico, splits work during the day between New Mexico and another state, and works in excess of 40 hours in a week with combined in-state and out-of-state hours, *id*. at *6, and "confine[d] its holding narrowly to a rejection of Defendant's argument that the NMMWA categorically never applies to hours worked out of state." *Id.* at *9. Thus, *Martinez* does not resolve the common question raised by Plaintiffs here: whether New Mexico drivers' time spent working across New Mexico's borders is compensable under the MWA's overtime provision.

within New Mexico.[5] Therefore, if the Court ultimately determines that time spent working in states other than New Mexico is compensable, then all class members can recover overtime under the MWA. If the Court determines that time spent driving outside of New Mexico is not compensable, on the other hand, then no class members can recover overtime. In sum: the cross-border drive time question will impact all class members (making it "common") and is *highly* important to all their claims (meaning it "predominates"). *See Felps*, 336 F.R.D. at 675.

To the extent Defendants argue that this question requires individualized inquiries as to the amount of time New Mexico drivers spent driving across state lines: Defendants are wrong. *Whether* the MWA compensates out-of-state time is a legal matter that does require individual inquiries. *How much* out-of-state time class members can claim for compensation may require individual inquiries, but that does not prevent certification. *See Rodriguez*, 2020 WL 3000415, at *17 (the question of how much time employees spent working overtime in New Mexico versus other states is a damages determination, and "'damages determinations are individual in nearly all wage-and-hour class actions,' which is precisely why damages calculations alone cannot defeat certification") (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013)).

### 3. Common Contentions Regarding Drivers' "Employee" Status Predominate.

Lastly, whether proposed class members qualified as Defendants' "employees" within the meaning of the MWA is a common issue that predominates. Defendants contend otherwise, asserting that "[s]ome members of the proposed class may be exempt under the [MWA] and, therefore, are not 'employees' under the [MWA]." (ECF No. 108 at 7). Defendants single out

---

[5] (ECF No. 90-1 (Defs' Amended Objections & Answers to Plfs' First Set of Interrogatories) at PDF Pg. 7 ("Approximately forty-eight (48) of EVO's employed drivers who worked in the State of New Mexico at some point from June 1, 2021 to the present worked more than forty (40) hours in at least one individual workweek of seven days. EVO further states, however, that *none* of its drivers … worked more than forty (40) hours in any individual workweek *within the State of New Mexico*.") (emphasis in original)).

Plaintiff Soto, contending he was a "supervisor under the MWA and, therefore, exempt from the definition of 'employee.'"[6] (*Id.*). As a result, Defendants argue that individualized inquiries about Plaintiff Soto's—and potentially other class members'—exemption status predominate over inquiries common to the class. (*See id.* at 7-8). Defendants' arguments are flawed, and cannot prevent certification, for multiple independent reasons that Plaintiffs outline below.

**a.    Defendants Fail to Support their Exemption Defense Arguments or Demonstrate that the Arguments Defeat Certification.**

Defendants' exemption arguments cannot prevent certification because Defendants fail to support those arguments. "[C]ertification should not be thwarted simply because [a defendant] speculates that it may raise various unsupported defenses against different class members." *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366, 371 (N.D. Ill. 2008). Yet that is all Defendants do here. They speculate that "[s]ome members" of the class "*may* be exempt." (ECF No. 108 at 7 (emphasis added)). But they do not identify who those members are, aside from Plaintiff Soto, and they do not explain why those unnamed class members would be exempt. (*Id.*). This cannot prevent certification. *Ramirez*, 250 F.R.D. at 371.

Nor can Defendants' unsupported argument regarding Plaintiff Soto defeat certification. Defendants are correct that the MWA removes "supervisors" from the definition of "employee," meaning "supervisors" cannot recover MWA overtime wages. NMSA § 50-4-21(C)(1). But to invoke the "supervisor" exemption, a defendant must prove that "***all*** of the following requirements" apply to a worker: "(1) their primary duty is to perform non-manual work related to management of the business; (2) they are to exercise discretion; (3) they regularly assist executives

---

[6] Defendants imply that there may be other Lead Drivers in the class whose presence could defeat class certification. (ECF No. 108 at 10 ("A conflict exists between any lead drivers in the potential class and the rest of the employees.")). However, as Defendants' own corporate witness Clifford B. Finkle testified, Plaintiff Soto is the only New Mexico Lead Driver on either contract at issue in this case. (ECF No. 90-2 (Deposition Transcript of Clifford B. Finkle ("Finkle Tr.") 37:4-15).

5

or perform specialized work or special assignments; and (4) they perform less than twenty percent manual work." N.M. Admin. Code § 11.1.4.7(F) (emphasis added). Defendants do not even *mention* all these elements in their response brief, much less explain how each *might* apply to Plaintiff Soto. This renders their exemption defense "unsupported," meaning it cannot prevent certification. *Ramirez*, 250 F.R.D. at 371.

There is another reason that Defendants' exemption defense regarding Plaintiff Soto cannot stop certification: the record proves the defense is baseless. A court may take "a preliminary look at the merits of an affirmative defense" when "needed to address issues of class certification." *Nelson v. IPALCO Enters., Inc.*, No. 2-cv-477, 2003 WL 23101792, at *6 n.3 (S.D. Ind. Sept. 30, 2003). Indeed, "[s]uch a preliminary look is vital where the defense contends that an affirmative defense requires denial of class certification." *Id.* After all: a "defendant should not be able to defeat class certification" simply by raising "specious or weak defenses." *Id.*

Defendants' exemption defense regarding Plaintiff Soto is just that—a defense that a brief, preliminary look at the record proves meritless. The MWA's supervisor exemption cannot apply to an individual unless they spend "less than twenty percent" of their time on "manual work" like truck driving. N.M. Admin. Code § 11.1.4.7(F); *see Donovan v. United Video, Inc.*, 725 F.2d 577, 583 (10th Cir. 1984) ("truck driving" is "manual work"). Here: Defendants' own documents prove that Plaintiff Soto spent *far more* than twenty percent of his time on truck driving—in fact, the figure is nearly *seventy percent.* Ex. 1, Declaration of Lynsey Major ("Major Decl.") ¶ 11. This alone disproves Defendants' exemption defense. And because Defendants' defense against Plaintiff Soto is easily disproven, there is no danger that it will become the focus of this litigation, meaning it cannot defeat predominance or undermine Plaintiffs' certification argument. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (plaintiffs can satisfy predominance even if

some "matters will have to be tried separately, such . . . some affirmative defenses peculiar to some individual class members"); *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 284 (N.D. Cal. 2016) (certification was proper where "affirmative defenses against some absent class members" did not "threaten to become the focus of the litigation") (citation and quotation omitted).

Even setting this aside, Defendants' exemption defense regarding Plaintiff Soto cannot undermine certification because that defense—meritless as it may be—impacts Plaintiff Soto and putative class members equally. *Hall v. Adelphia Three Corp.*, No. 21-cv-01106, 2023 WL 869232, at *6 (D.N.J. Jan. 27, 2023) (a defense "equally applicable to all putative class members" does not stop certification). As noted: the supervisor exemption looks to individuals' "primary" job duties to determine if the individuals were supervisors. N.M. Admin. Code § 11.1.4.7(F). Here, it is true that Plaintiff Soto was called a "Lead Driver" whereas other class members were called "Driver[s]." (*See* ECF No. 90-2 (Finkle Tr. at 37:9-11)). But the primary job duties for both positions were nearly identical, as Defendants' own documents and witness testimony prove.[7]

In fact, all named Plaintiffs (including Plaintiff Soto) and all class members worked the same primary duty. They all transported U.S. mail across state borders, driving their assigned routes "each time they were scheduled to work."[8] And their routes all took between four and eight hours to complete each shift.[9] That all class members, including Plaintiff Soto, performed the same

---

[7] (*See* ECF No. 90-2 (Finkle Tr.) 20:22-24; ECF No.90-10 (Driver Job Description) (listing three duties and responsibilities of Drivers: (1) safely and conscientiously operate company vehicles; (2) adhere to contract requirements when performing transportation routes; and (3) adhere to scheduled delivery times, inspect vehicles, verify delivery of correct items, and record delivery information); Ex. 2 (Lead Driver Job Description) (stating that "Lead Drivers assume the duties of a Driver" and listing the same three duties and responsibilities of Drivers plus two additional ancillary duties of "*work[ing] with* local management to schedule Drivers" and *notify[ing]* local management of schedule changes, USPS volume changes, Driver availability, maintenance issues and scheduling of equipment") (emphasis added)).

[8] (ECF No. 90-3 (Defs' Amended Objections & Answers to Plfs Second Set of Interrogatories at PDF Pg. 7).

[9] (ECF No. 90-3 (Defs' Amended Objections & Answers to Plfs Second Set of Interrogatories at PDF Pgs. 2-5 (listing all New Mexico routes by distance and drive time)).

primary job duty weighs in favor of predominance and certification. *See Rodriguez*, 2020 WL 30000415, at *15 (predominance met where pressure control operators and trainees "share similar primary job responsibilities to perform manual work" despite having several differing non-primary job duties and working at different job sites).[10]

> **b.    Defendants Waived Their Exemption Defense Arguments, Meaning the Arguments Cannot Stop Certification.**

Even if Defendants' exemption arguments were not facially invalid (and unsupported), they could not prevent certification because Defendants have waived any exemption defense. Federal Rule of Civil Procedure 8(c) "requires that affirmative defenses be pleaded or they are deemed waived." *Renfro v. City of Emporia, Kan.*, 948 F.2d 1529, 1539 (10th Cir. 1991); *see also* Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense"). Thus, in the context of analogous Fair Labor Standards Act ("FLSA") exemptions,[11] courts have consistently deemed exemption arguments not raised in responsive pleadings to be waived where, as here, discovery has closed. *Renfro*, 948 F.2d at 1539 (FLSA exemption defense not raised until after close of discovery and court granted summary judgment in favor of plaintiffs deemed waived); *Pruess v. Presbyterian Health Plan, Inc.*, No. 19 Civ. 00629,

---

[10] Plaintiff Soto also refutes Defendants' contention that he "had the authority to hire, fire, discipline or promote the other Plaintiffs" or "generally managed and supervised the other Plaintiffs." (*See* ECF No. 108 at 3-4). In support of its contention, Defendants cite only to its own discovery responses stating that he had "*limited* authority to hire, fire, discipline, and/or promote Plaintiffs during the relevant time period *subject to the approval of John Miller and in coordination with EVO's Senior Vice President for Human Resources, Jared Brown*" and that "the Plaintiffs in this case were supervised/managed by Lead Driver Jacob Soto." (ECF No. 108-3 at PDF Pgs. 3, 7 (emphasis added)). Defendants point to no examples of Plaintiff Soto exercising such authority in their discovery responses, or elsewhere in the record. Notably, the Lead Driver Job Description does not confer these responsibilities on Lead Drivers, such as Plaintiff Soto. *See* Ex. 2 (Lead Driver Job Description). Testimony from Plaintiff Soto confirms he had no such authority. *See, e.g.*, Ex. 3 (Deposition Transcript of Jacob Soto ("Soto Tr.") 32:2-11 (describing Lead Driver duties as scheduling and "getting vehicles in for any type of maintenance or services"), 32:15-20 (Plaintiff Soto did not have a role in hiring), 134:12-19 (Plaintiff Soto did not fire or discipline drivers).

[11] "New Mexico courts have frequently looked to interpretations of the FLSA in order to interpret similar language in the MWA." *Rivera v. McCoy Corp.*, 240 F. Supp. 3d 1150, 1155 (D.N.M. 2017) (collecting cases).

2024 WL 1329434, at *6 (D.N.M. Mar. 28, 2024) (defendants could not assert waived FLSA exemption at class certification stage where discovery had closed and plaintiffs "lost the opportunity to depose anyone on th[e] exemption").

Here, Defendants waived any exemption defense because they failed to raise any in their Answer to the Complaint (ECF No. 7 at 3 (listing affirmative defenses)) and they did not otherwise raise one before fact discovery closed. Plaintiffs first learned of Defendants' intent to raise the supervisor exemption as to Plaintiff Soto in Defendants' Response to Plaintiffs' motion for class certification.[12] Had Plaintiffs been aware of Defendants' intent to raise an exemption defense prior to the close of fact discovery, Plaintiffs would have propounded written discovery requests and taken depositions related to the exemption. Allowing Defendants to assert an exemption defense at this late stage of litigation would undoubtedly prejudice Plaintiffs. *See Pruess*, 2024 WL 1329434, at *6. Bottom line: Defendants have no exemption defense—because it is waived— meaning they cannot use an exemption defense to prevent certification.

### c.    Defendants' Exemption Defense Cannot Prevent Certification Because, at Most, it Applies only to Plaintiff Soto.

Even if the Court disagrees that Defendants' exemption defense regarding Plaintiff Soto is unsupported and waived, that defense *still* does not prevent certification. Plaintiff Soto is the only Lead Driver in the putative class. (*See* ECF No. 90-2 (Finkle Tr. at 37:9-15)). All others, including all other named Plaintiffs, held the role of Driver. (*See id.*). So, even if the Court determines that individualized issues defeat certification as to Plaintiff Soto's claims, the Court may exercise its discretion to amend Plaintiffs' proposed class definition to exclude any Lead Driver and appoint

---

[12] Defendants still have not put Plaintiffs on notice as to whether they intend to raise an exemption defense as to "some" other class members. (*See* ECF No. 108 at 7 (stating only in general terms that "[s]ome of the members of the proposed class may be exempt under the NMMWA")).

the other named Plaintiffs as class representatives. *See Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 553 (D. Colo. 1998) (appointing two out of three prospective representative plaintiffs as class representatives and certifying class).

Because all of Defendants' exemption arguments fail, the Court should hold that whether class members qualified as "employees" under the MWA is a common, predominating issue for the reasons outlined in Plaintiffs' motion for class certification.

### C.    Plaintiffs Have Established Typicality.

"To satisfy the typicality requirement, a party seeking class certification must demonstrate that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) (quoting Fed. R. Civ. P. 23(a)(3)). Defendants assert that the typicality requirement cannot be satisfied because Plaintiff Soto is exempt from the MWA. (*See* ECF No. 108 at 9). This argument cannot prevent certification for reasons already discussed. Plus: a single defense ostensibly applicable to one individual does not defeat typicality. *Nitsch*, 315 F.R.D. at 284 ("[T]he fact that Defendants may have affirmative defenses against some absent class members does not affect the Court's typicality analysis.").

Defendants also contend, without pointing to any evidence, that Plaintiffs fail the typicality requirement because class members worked under two different USPS contracts, and "[i]n order to resolve the issue of whether work outside the state would be compensable, there needs to be an individualized review of routes and the circumstances surrounding each work week." (ECF No. 108 at 9). Not true. The Court only needs to determine whether, as a legal matter, cross-border drive time is compensable under the MWA. If the answer is "yes," then all class members should be paid for all their working hours, meaning no individualized reviews will be needed. Of course, even if such reviews were needed, they would only impact damages. And where "damages" need to be "tried separately," that does not defeat certification. *Tyson Foods, Inc.*, 577 U.S. at 453.

10

This aligns with the principle that "[d]iffering fact situations of class members do not defeat typicality so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Menocal*, 882 F.3d at 914 (internal quotations omitted). Here, Plaintiffs' and class members' overtime claims are based on the same legal theory: that Defendants failed to pay overtime wages for overtime hours in violation of the MWA. That class members drove different routes is immaterial, legally. And it does not defeat typicality because all class members performed the same primary duty (transporting U.S. mail), worked under the same uniform policies and procedures, used the same electronic logging devices ("ELDs"), and were subject to the same job requirements.[13] Defendants also uniformly tracked all class members' hours and calculated wages using the same ELD and payroll systems.[14] Because all class members share a common legal theory, and seek identical relief based on parallel facts, typicality is satisfied. *See Rodriguez*, 2020 WL 30000415, at *8 (typicality satisfied for employees despite some variation in job duties and time spent working in New Mexico versus other states).

### D.   Plaintiffs Have Established Adequacy.

Defendants assert that Plaintiffs cannot establish adequacy for the same reasons Plaintiffs supposedly cannot establish typicality. This means Defendants' adequacy arguments fail for the reasons outlined above. And Plaintiffs do satisfy the adequacy requirement: they seek the same relief as class members, there are no defenses unique to any Plaintiff or class members, Defendants do not challenge the adequacy of Plaintiffs' counsel, and Defendants do not point to any other reason that Plaintiffs will not adequately protect the interests of the class. *See Rodriguez*, 2020 WL 30000415, at *9-10, *11 (explaining how adequacy is established in similar circumstances).

---

[13] (ECF No. 90 at Sections II.A-C).

[14] (*Id.* at Section II.C); Ex. 4 (Defs' First Suppl. Answers to Plfs' Third Set of Interrogatories) at PDF Pg. 5-6 (Defendants used the same bank accounts, payroll systems, and tax identification numbers, processing procedures, and controllers to pay drivers regardless of which contract they drove under).

### E.    Plaintiffs Have Fulfilled the Superiority Requirement.

As discussed in Plaintiffs' opening brief, a class action is the superior mechanism for resolving class members' overtime claims. (*See* ECF No. 90 at 21). Defendants' challenge to superiority stems from their argument that individual questions regarding class members' exemption status and routes must be addressed to resolve class members' overtime claims. (*See* ECF No. 108 at 13). But as discussed at length above, Defendants are simply wrong. Moreover, common evidence will establish that all routes included drive time in New Mexico and another state.[15] Because no class member worked more than forty hours in any individual workweek solely within New Mexico, the question of how much time each class member engaged in cross-border driving is legally irrelevant or, at most, a damages question that can be easily resolved by reference to Defendants' route information and ELD data.[16] For the reasons stated herein and in Plaintiffs' opening brief, a class action is superior to other methods of adjudication.

### III.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for class certification and certify the class defined in that motion.

---

[15] (ECF No. 90-3 (Defs' Suppl. Objections & Answers to Plfs' Second Set of Interrogatories) at PDF Pgs. 3-5; ECF No. 90-2 (Finkle Tr.) 48:7-9, 52:16-24, 56:14-58:25; ECF No. 90-4 (Deposition Transcript of Candice Cooke ("Cooke Tr.")) 36:7-22; ECF No. 90-5 (Deposition Transcript of Steven Vargo ("Vargo Tr.")) 54:24-55:9). Notably, Defendants' argument that the Court must determine whether any class member drove a route outside of USPS Contract 274Y3 and USPS Contract 793L7 routes because Plaintiff Vargo once drove another route is highly misleading. (*See* ECF No. 108 at 13). While Plaintiff Vargo did drive to St. Louis, Missouri and Austin, Texas, he did so *after* USPS Contract 274Y3 ended and Defendants terminated his employment. Ex. 5 (Vargo Tr.) 121:6-122:18. Defendants have pointed to no evidence that would (or could) show that class members drove any routes other than those associated with the two contracts at issue in this case during their regular employment with Defendants.

[16] (ECF No. 90-3 (Defs' Suppl. Objections & Answers to Plfs' Second Set of Interrogatories) at PDF Pgs. 3-6 (showing route distances and times); ECF No. 90-1 (Defs' Amended Objections & Answers to Plfs' First Set of Interrogatories) at PDF Pg. 11 (stating, in response to Interrogatory 5, "[n]one of EVO's New Mexico drivers worked more than forty (40) hours *within the State of New Mexico*") (emphasis added); ECF No. 90-16 (2022 Driver Policy Handbook) at EVO 02257 ("The Omnitracs ELD or EOBR also allows us to track the movement of all of our vehicles in real-time"); ECF No. 90-17 (2023 Driver Policy Handbook at EVO 002319 (same); ECF No. 90-18 (2024 Driver Policy Handbook) at EVO 002382 (same)).

Dated: December 5, 2025        Respectfully submitted,

*/s/ John J. Frawley*
One of Plaintiffs' Attorneys

Douglas M. Werman
John J. Frawley
Anne Kramer
**WERMAN SALAS P.C.**
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
Tel.: (312) 419-1008
dwerman@flsalaw.com
jfrawley@flsalaw.com
akramer@flsalaw.com

Justin R. Kaufman
Philip M. Kovnat
**DURHAM, PITTARD & SPALDING, LLP**
505 Cerrillos Road, Suite A209
Santa Fe, New Mexico 87501
Tel.: (505) 986-0600
jkaufman@dpslawgroup.com
pkovnat@dpslawgroup.com

***Attorneys for Plaintiffs***

13

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 5, 2025, I caused a copy of the foregoing document to be served on all counsel of record by filing it via the Court's electronic filing system.

*/s/ John J. Frawley*
John J. Frawley